## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KEITH SEIDON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>    Plaintiff<br><br>vs.<br><br>HEALTHPLANONE, LLC<br><br>    Defendant. | Case No. |

## **CLASS ACTION COMPLAINT**

### **Preliminary Statement**

1. As the Fourth Circuit Court of Appeals has explained, "[t]elemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9)"

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal

government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 649-50 (4th Cir. 2019).

3.      Plaintiff Keith Seidon ("Mr. Seidon") brings this action under the TCPA alleging that Crisp Marketing, LLC ("Crisp Marketing") was hired by HealthPlanOne, LLC ("HealthPlanOne") to send telemarketing calls promoting their goods and services, including to individuals who were on the National Do Not Call Registry. Such calls were made without the call recipient's prior express written consent.

4.      Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing call.

5. A class action is the best means of obtaining redress for the Defendant' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

6. Plaintiff Keith Seidon is an individual.

7. Defendant HealthPlanOne, LLC is a limited liability company with its principal place of business in this District.

## Jurisdiction & Venue

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9. HealthPlanOne, LLC is subject to personal jurisdiction as it is headquartered in this District.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiff were organized from this District.

## The Telephone Consumer Protection Act

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

12. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

13. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

14. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**Factual Allegations**

15. HealthPlanOne provides insurance services to consumers.

16. HealthPlanOne uses telemarketing to promote its products and solicit new clients.

17. HealthPlanOne hires third parties to facilitate those telemarketing calls, such as Crisp Marketing.

18. HealthPlanOne authorized these calls despite the fact that Crisp Marketing has been sued for this same conduct. *See e.g. Batista v. Crisp Marketing, LLC,* Civil Action No. 21-cv-60217 (S.D. Fl.)

19. Indeed, HealthPlanOne has already been sued for the telemarketing conduct of Crisp Marketing, but continued to do business with them, leading to the call to Keith Seidon. *See McHugh v. HealthPlanOne, LLC*, Civil Action No. 22-cv-1080 (D. Ct.).

4

20. Mr. Seidon received two telemarketing calls from Crisp Marketing who HealthPlanOne hired to send telemarketing calls and consistent with HealthPlanOne's instruction on September 16, 2022 and November 29, 2022.

21. The calls were received on 954-593-XXXX.

22. This is the Plaintiff's cellular telephone number.

23. That is the Plaintiff's residential telephone number.

24. That number is not associated with a business and is used for personal purposes.

25. That number has been on the National Do Not Call Registry since April 30, 2022.

26. The calls from Crisp Marketing were scripted solicitations for HealthPlanOne.

27. Both calls stated that they were calling on behalf of Clear Match Medicare.

28. The ClearMatch Medicare website is operated by HealthPlanOne.

29. The calls advertised supplemental Medicare services.

30. HealthPlanOne would sell, for a fee, insurance services not completely covered by Medicare.

31. The Plaintiff was not interested in the service and told them he was not interested on the September 16, 2022 call.

32. Despite that, the Plaintiff received another call on November 29, 2022.

33. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

34. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

### **HealthPlanOne's Liability for Crisp Marketing's Conduct**

35. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

36. In fact, the Federal Communication Commission has instructed that sellers such as HealthPlanOne Insurance may not avoid liability by outsourcing telemarketing to third parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) ("May 2013 FCC Ruling") (internal citations omitted).

37. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586, ¶ 34.

38. HealthPlanOne is liable for the telemarketing calls that were initiated by Crisp Marketing.

6

39. First, HealthPlanOne hired Crisp Marketing to send the pre-recorded calls despite the fact that Crisp Marketing has been sued for engaging in pre-recorded calling conduct that is alleged to have violated the TCPA.

40. HealthPlanOne hired Crisp Marketing to originate new business using telemarketing calls.

41. HealthPlanOne could have restricted Crisp Marketing from calling consumers using a pre-recorded message, but it did not.

42. HealthPlanOne accepted the benefits of Crisp Marketing's illegal telemarketing by accepting leads directly from Crisp Marketing, despite the fact that those leads were generated through illegal telemarketing.

43. HealthPlanOne determined the parameters and qualifications for customers to be transferred and required Crisp Marketing to adhere to those requirements.

44. HealthPlanOne gave interim instructions to Crisp Marketing, including instructions as to the geographic areas to target, the hours Crisp Marketing could call, and the volume of calling.

45. By having Crisp Marketing initiate the calls on its behalf to generate new business, HealthPlanOne "manifest[ed] assent to another person ... that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

46. HealthPlanOne reviewed and approved the Crisp Marketing scripts for determining whether a customer was eligible to be transferred, as discussed in the May 2013 FCC Ruling.

47. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *Id.* at 6592-593, ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593, ¶ 46.

## Class Action Statement

48. Plaintiff brings this action on behalf of himself and the following Classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) or (b)(3).

49. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Do Not Call Registry Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant (3) within a 12-month period (4) from four years prior to the filing of the case through the date of class certification.

50. Plaintiff Seidon is a member of the Do Not Call Registry Class.

51. The Plaintiff will fairly and adequately represent and protect the interests of this classes as he has no interests that conflict with any of the class members.

52. Excluded from the Class are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

53. Plaintiff and all members of the Class have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time,

the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

54. The Class as defined above are identifiable through the Defendant' dialer records, other phone records, and phone number databases.

55. Plaintiff do not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each class.

56. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

57. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

58. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

59. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    (a) Whether the Defendant used pre-recorded message to send telemarketing calls;

    (b) Whether the Defendant made telemarketing calls to numbers on the National Do Not Call Registry Class;

    (c) Whether HealthPlanOne is vicariously liable for any of the calling conduct;

    (d) whether Defendant made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

    (e) whether Defendant's conduct constitutes a violation of the TCPA; and

    (f) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

60. Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.

61. Plaintiff have no interests which are antagonistic to any member of the Class.

62. Plaintiff have retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.

63. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

64. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

65. Plaintiff Seidon repeats and incorporates the prior allegations as if fully set forth herein.

66. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

67. The Defendant's violations were negligent, willful, or knowing.

68. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

69. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendant from calling cellular telephone numbers advertising their goods or services, except for emergency purposes, using a pre-record message or making telemarketing calls to numbers on the National Do Not Call Registry in the future;

B. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D. Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.

                Plaintiff,
                By Counsel,

                By: */s/ Anthony Paronich*
                Anthony I. Paronich
                Paronich Law, P.C.
                350 Lincoln Street, Suite 2400
                Hingham, MA 02043
                (617) 485-0018
                anthony@paronichlaw.com